ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL V

| | | |
|---|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION T/C/C FANNIE MAE<br><br>Peticionario<br><br>v.<br><br>JAVIER LÓPEZ BUDET<br><br>Recurrido | KLCE202301119 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.: CG2022CV01910<br><br>Sobre: Cobro de Dinero y Ejecución de Hipoteca |

Panel integrado por su presidente, el Juez Hernández Sánchez, la Jueza Romero García y la Jueza Martínez Cordero.

*Martínez Cordero, Jueza Ponente*

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 31 de octubre de 2023.

Comparece Federal National Mortgage Association t/c/c Fannie Mae (en adelante, parte peticionaria y/o Fannie Mae) para solicitarnos la revisión de la *Orden* emitida el 17 de julio de 2023, y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala de Caguas (en adelante, TPI).[1] Mediante el dictamen recurrido, el foro primario denegó una solicitud de enmienda a una *Orden* de retiro de fondos emitida el 18 de mayo de 2023 y notificada el 22 de mayo de 2023.[2]

I

El 13 de junio de 2022, First Bank Puerto Rico presentó una *Demanda* en cobro de dinero y ejecución de hipoteca contra el señor Javier López Budet (en adelante, parte recurrida o señor López Budet).[3] Adujo que Federal National Mortgage Association t/c/c

---

[1] Apéndice de la parte peticionaria, a la pág. 143.
[2] *Id.,* a las págs. 138.
[3] *Id.,* a las págs. 1-11.

Número Identificador

RES2023_____

Fannie Mae era la dueña del pagaré objeto de la *Demanda* presentada. No obstante, lo anterior, expresó que se encargaban de proveer el servicio de administración del préstamo y que tenían derecho a instar la acción en virtud del artículo 2 de la Ley de Instrumentos Negociables[4]. First Bank Puerto Rico alegó que, el 15 de noviembre de 2012, se otorgó ante un notario:

> un pagaré a favor de Banco Santander de Puerto Rico o a su orden, por la suma principal de $319,619.00, más intereses desde esa fecha hasta el pago total del principal a razón de 3.625% de interés anual sobre el balance adeudado ("**el pagaré o instrumento**"). Además, el pagaré provee para pagar recargos por demora equivalentes al 5.000% de la suma de aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha [de] vencimiento; y una cantidad equivalente a $31,961.90 por concepto de costas, gastos y honorarios de abogados en caso de reclamación judicial.[5]

Expresó, además, que, para garantizar el pago de dicho pagaré se constituyó una hipoteca voluntaria mediante escritura y que, tanto el inmueble como la escritura pública en cuestión, constaban inscritos en el Registro de la Propiedad.[6] El inmueble se describe de la siguiente forma:

> URBANA: Solar número 404 de la Urbanización Ciudad Jardín de Bairoa, Fase II, localizada en el Barrio Bairoa del Municipio de Caguas, Puerto Rico, con una cabida superficial de 627.16 metros cuadrados. En lindes por el Norte, en una distancia de 27.438 metros, con el solar número 405; por el Sur, en una distancia de 27.303 metros, con el solar número 403; por el Este, en un arco de longitud de 23.163 metros, con la calle Valencia de dicha urbanización; y por el Oeste, en dos alineaciones distintas, en una distancia de 9.046 metros, con el solar número 410 y otra distancia de 14.090 metros, con el solar número 411, todos estos solares y la calle pertenecientes al referido desarrollo urbano. Enclava una casa de concreto diseñada para una sola familia, construida de acuerdo con los planos y especificaciones sometidos y aprobados por las agencias e instrumentalidades gubernamentales pertinentes.[7]

---

[4] 19 LPRA sec. 451.
[5] *Id.,* a la pág. 2.
[6] *Id.,* a la pág. 2.
[7] *Id.,* a la pág. 2.

En la *Demanda,* First Bank Puerto Rico adujo que la parte demandada adeudaba $294,143.82 y desglosó de dónde surgía la suma de dinero.[8]

Luego de varios incidentes procesales innecesarios pormenorizar, 17 de febrero de 2023, el foro primario emitió una *Sentencia en Rebeldía* (en adelante, Sentencia).[9] La misma fue notificada el 22 de febrero de 2023.[10] En ella, condenó a la parte demandada a pagar a First Bank Puerto Rico lo siguiente:

> la suma de $294,143.82 la cual se desglosa de la siguiente manera: la suma de $233,358.39 en principal, más los intereses al 3.625% anual desde el día 1 de diciembre de 2019, así como los intereses acumulados y por acumularse a partir de esa fecha y hasta el total y completo repago de la deuda; cargos por demora equivalentes al 5.000% de todos aquellos pagos con atrasos en exceso de 15 días calendarios de la fecha de vencimiento hasta el total y completo repago de la deuda; los créditos accesorios y adelantos hechos en virtud de la escritura de hipoteca; $31,961.90, para el pago de costas, gastos y honorarios de abogado como suma pactada a dichos efectos en el pagaré. La suma de $60,785.43 denominado como balance diferido, no generará intereses y sería pagadera a la fecha de vencimiento de 1ro de octubre de 2059.[11]

De la *Sentencia* se desprende, además, que, de no hacer efectivo el pago de las sumas adeudadas, se ordenaría la venta en pública subasta del inmueble objeto del caso del título. Allí, se expresó que el tipo mínimo para la primera subasta sería la suma de $319,619.00 y que de no haber remate ni adjudicación en la primera subasta, se celebraría una segunda subasta, para la cual serviría de tipo mínimo las dos terceras partes (2/3) del precio pactado en la primera subasta, es decir, la suma de $213,079.33. Por último, se desprende que, si no había remate ni adjudicación en la segunda subasta, se celebraría una tercera subasta para la cual serviría de tipo mínimo la mitad (1/2) del precio pactado para el caso de ejecución, o sea, la suma de $159,809.50.

---

[8] *Id.,* a la pág. 3.
[9] *Id.,* a las págs. 99-101.
[10] *Id.,* a la pág. 98.
[11] *Id.,* a la pág. 101.

Así las cosas, la parte peticionaria presentó una *Moción en Solicitud de Sustitución de Parte, de que se Enmiende el Epígrafe del Caso y Solicitando Ejecución de Sentencia.*[12] De ahí, en lo pertinente, el 31 de marzo de 2023, el tribunal *a quo* emitió una *Orden de Ejecución de Sentencia y Venta de Bienes.*[13] Como parte de los trámites procesales, el *Mandamiento de Ejecución* fue expedido.[14] Luego, la parte peticionaria presentó un escrito intitulado *Trámite al Expediente del Tribunal Sometiendo Evidencia de Haber Cumplido con la Regla 51.7 de Procedimiento Civil.*[15]

Así las cosas, el 17 de mayo de 2023, la parte peticionaria presentó una *Moción en Solicitud de Confirmación de Venta Judicial.*[16]

El 17 de mayo de 2023, la parte peticionaria también presentó una *Moción en Solicitud de Retiro de Fondos.*[17] Alegó que, durante la celebración de la venta en pública subasta del inmueble objeto de ejecución, el licitador a quien se le adjudicó la *buena pro* de la subasta ofreció la cantidad de $325,600.00 y que el Alguacil le adjudicó el inmueble en dicho precio.[18] Arguyó que la propiedad objeto de ejecución se encontraba garantizada por el pagaré objeto de la presente acción a favor de Banco Santander de Puerto Rico o a su orden por la suma de $319,619.00, cuyo balance al día de la venta judicial presuntamente era de $368,645.81. En virtud de lo

---

[12] *Id.,* a la pág. 102-110. *Véase*, además, entrada Núm. 21 del Sistema Unificado de Manejo y Administración de Caso (SUMAC): El 3 de marzo de 2023, el foro primario emitió y notificó una *Orden* en la cual aceptó la sustitución de parte y ordenó a enmendar el epígrafe. Dicha Orden se notificó a Javier López Budet, el Centro de Mediación de Conflictos Centro Judicial de Caguas y Vanessa M. Torres Quiñones.

[13] *Id.,* a las págs. 111-112. *Véase*, además, entrada Núm. 22 del SUMAC.

[14] *Id.,* a las págs. 113-115.

[15] *Id.,* a las págs. 116-130. *Véase*, además, entrada Núm. 25 del SUMAC: La moción *Trámite al Expediente del Tribunal Sometiendo Evidencia de haber cumplido con la Regla 51.7 de Procedimiento Civil* se notificó al Centro de Mediación de Conflictos del Centro Judicial de Caguas, a Jorge Bird Serrano y a Vanessa M. Torres Quiñones. No obstante, no se notificó al señor López Budet.

[16] *Id.,* a las págs. 131-134.

[17] *Id.,* a las págs. 135-137. *Véase*, además, entrada Núm. 26 del SUMAC: La *Moción en Solicitud de Retiro de Fondos* se notificó al Centro de Mediación de Conflictos Centro Judicial de Caguas, a Jorge Bird Serrano y Vanessa M. Torres Quiñones. No obstante, no se notificó al señor López Budet.

[18] *Id.,* a la pág. 135.

alegado, solicitó que se emitiera un cheque a nombre de Federal National Mortgage Associacion t/c/c Fannie Mae por la cantidad de $325,600.00.

En lo que sigue, el 18 de mayo de 2023, el tribunal *a quo* emitió una *Orden,* notificada el 22 de mayo de 2023, mediante la cual dispuso que la Unidad de Cuentas emitiera un cheque a favor de la parte peticionaria por la suma de $294,143.82.[19]

Por su parte, en respuesta a la solicitud de confirmación de venta judicial, el foro primario emitió una *Orden* el 17 de mayo de 2023, notificada el 1 de junio de 2023. En ella dispuso confirmar el procedimiento de ejecución de hipoteca, el remate, venta y, por consiguiente, la adjudicación del bien hipotecado, celebrado el 17 de mayo de 2023, concluyendo que se cumplieron todas las formalidades requeridas en el trámite judicial.[20]

Posteriormente, el 17 de julio de 2023, la parte peticionaria, inconforme con la *Orden* emitida el 18 de mayo de 2023 y notificada el 22 de mayo de 2023, presentó una *Moción en Solicitud de Enmienda a Orden de Retiro de Fondos.*[21] En ella, expresó que la suma de dinero por la cual el foro primario ordenó que se expidiera el cheque a su favor era el equivalente a la suma reclamada en la *Demanda* por concepto de principal, pero no cubría la totalidad de la deuda la cual adujo, a la fecha de la subasta era de $368,645.81. Basado en lo anterior, solicitó que se enmendara la *Orden* y que el cheque fuese expedido por una suma mayor, es decir, por la suma

---

[19] *Id.,* a la pág. 138. *Véase*, además, entrada Núm. 29 del SUMAC: El 18 de mayo de 2023, notificada el 22 de mayo de 2023, el foro primario emitió una *Orden* la cual se notificó a Jorge Bird Serrano y a Vanessa M. Torres Quiñones. No obstante, no se notificó al señor López Budet.

[20] *Id.,* a las págs. 139-140. *Véase*, además, entrada Núm. 30 del SUMAC: El 17 de mayo de 2023 el foro primario una Orden que se notificó el 1 de junio de 2023, la cual se notificó a Jorge Bird Serrano, a Vanessa M. Torres Quiñones y al Centro de Mediación de Conflictos Centro Judicial de Caguas. No obstante, no se notificó al señor López Budet.

[21] *Id.,* a las págs. 141-142. *Véase*, además, entrada Núm. 35 del SUMAC: La *Moción en Solicitud de Enmienda a Orden de Retiro de Fondos* se notificó a Jorge Bird Serrano, a Vanessa M. Torres Quiñones, al Centro de Mediación de Conflictos Centro Judicial de Caguas y a Jesús Alberto Aldarondo. No obstante, no se notificó al señor López Budet.

de $325,600.00, equivalente a la cantidad que pagó el licitador que obtuvo la *buena pro* en la subasta. En respuesta, el 17 de julio de 2023, el foro primario emitió una *Orden* mediante la cual denegó la solicitud de la parte peticionaria, notificando la misma el 18 de julio de 2023.[22]

Inconforme, el 19 de julio de 2023, la parte peticionaria presentó una *Moción de Reconsideración*.[23] En respuesta, mediante *Orden* emitida el 6 de septiembre de 2023, notificada el 12 de septiembre de 2023, el foro primario dispuso: "[v]éase sentencia".[24]

Insatisfecha aún, el 11 de octubre de 2023, la parte peticionaria presentó un escrito intitulado *Certiorari Civil*, mediante el cual esgrimió la comisión de un (1) error por el foro primario, a saber:

> PRIMER ERROR: Err[ó] el TPI al denegar la solicitud de enmienda a la Orden de Retiro de Fondos indicando que se vea la Sentencia, cuando la propia Sentencia provee para el pago de las sumas de balance de principal y otras partidas[.]

Mediante *Resolución* emitida por este Tribunal el 13 de octubre de 2023, se concedió a la parte peticionaria hasta el 20 de octubre de 2023, para acreditar haber notificado copia del recurso presentado al foro primario, así como para acreditar haber notificado copia del recurso a la parte recurrida. Igual término concedimos para que la parte peticionaria mostrara causa por la cual el recurso ante nos no debía ser desestimado por falta de jurisdicción.

---

[22] *Id.,* a la pág. 143. *Véase,* además, entrada Núm. 36 del SUMAC: El 17 de julio de 2023, notificada al día siguiente el foro primario emitió una *Orden* la cual se notificó a Jorge Bird Serrano, a Vanessa M. Torres Quiñones, al Centro de Mediación de Conflictos Centro Judicial de Caguas y a Jesús Alberto Aldarondo Torres. No obstante, no se notificó al señor López Budet.

[23] *Id.,* a las págs. 144-148. *Véase,* además, entrada Núm. 38: La *Moción de Reconsideración* se notificó a Jorge Bird Serrano, a Vanessa M. Torres Quiñones, al Centro de Mediación de Conflictos Centro Judicial de Caguas y a Jesús Alberto Aldarondo Torres. No obstante, no se notificó al señor López Budet.

[24] *Id.,* a la pág. 149. *Véase,* además, entrada Núm. 40 del SUMAC: El 6 de septiembre de 2023, el foro primario emitió una *Orden* que se notificó el 12 de septiembre de 2023, la cual se notificó a Jorge Bird Serrano, a Vanessa M. Torres Quiñones y a Jesús Alberto Aldarondo Torres. No obstante, no se notificó al señor López Budet.

El 20 de octubre de 2023, la parte peticionaria presentó *Moción en Cumplimiento de Orden*. En su escrito, acreditó haber cumplido con nuestra *Resolución* en términos de la notificación a la parte recurrida, así como al foro primario. Con relación a la mostración de causa por la cual el recurso no debía ser desestimado por falta de jurisdicción expresó que el mismo fue presentado en término, habida cuenta de que la *Orden* recurrida fue emitida el 17 de julio de 2023, que el 19 de julio se solicitó la reconsideración de la *Orden* y que 6 de septiembre de 2023, notificándose el 12 de septiembre de 2023, el foro primario resolvió la solicitud de reconsideración expresando "[v]éase Sentencia".

Considerando que la regla 7 (B)(5) del Reglamento del Tribunal de Apelaciones,[25] nos confiere la facultad para prescindir de escritos, en cualquier caso, con el propósito de lograr su más justo y eficiente despacho, hemos acordado disponer del presente recurso sin requerir mayor trámite.

II

### A. Jurisdicción y Recurso Prematuro

La jurisdicción es el poder o la autoridad que posee un tribunal para resolver las controversias presentadas ante su consideración.[26] Los tribunales adquieren jurisdicción por virtud de ley, por lo que no pueden arrogársela ni las partes pueden otorgársela.[27] Es norma reiterada en nuestro ordenamiento, que: "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[28] Es norma reconocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su

---

[25] 4 LPRA Ap. XXII-B, R.7 (B)(5).
[26] *AAA v. Unión Independiente Auténtica de Empleados de la AAA*, 199 DPR 638, 651-52.
[27] *Ríos Martínez, Com. Alt. PNP v. CLE*, 196 DPR 289, 296 (2016).
[28] *Peerless Oil v. Hnos. Torres Pérez*, 186 DPR 239, 250 (2012). *S.L.G. Szendrey-Ramos v. F. Castillo*, 169 DPR 873, 882 (2007). *Ríos Martínez, Com. Alt. PNP v. CLE, Id.*

consideración constituyen materia privilegiada.[29] De manera que, debido a su naturaleza privilegiada, las cuestiones de jurisdicción deben ser resueltas con preferencia, ya sea porque fuera cuestionada o motu proprio, pues, por su naturaleza, incide directamente sobre el poder que tiene para adjudicar las controversias.[30]

Por tal motivo, cuando un tribunal carece de jurisdicción, debe declararlo y desestimar la reclamación sin entrar en sus méritos.[31] De lo contrario, cualquier dictamen en los méritos será nulo y, por ser ultra vires, no se puede ejecutar.[32] Es decir, una sentencia, dictada sin jurisdicción por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente.[33]

Como corolario de lo anterior, el Tribunal Supremo de Puerto Rico ha desarrollado el principio de la justiciabilidad, el cual recoge una serie de doctrinas de autolimitación basadas en consideraciones prudenciales que prohíben al foro judicial emitir opiniones consultivas, y fue incorporado jurisprudencialmente a nuestro ordenamiento jurídico mediante el caso de *ELA v. Aguayo*, 80 DPR 552, 595 (1958).[34] La doctrina de justiciabilidad persigue evitar emitir decisiones en casos que realmente no existen o dictar una sentencia que no tendrá efectos prácticos sobre una controversia.[35] En ese contexto, un asunto no es justiciable cuando: se trata de resolver una cuestión política, una de las partes carece de legitimación activa para promover un pleito, después de comenzado el litigio hechos posteriores lo tornan en académico, las

---

[29] *AAA v. Unión Abo. AAA*, 158 DPR 273, 279 (2002).
[30] *Fuentes Bonilla v. ELA*, 200 DPR 364, 372 (2018).
[31] 4 LPRA Ap. XXII-B, R. 83. *González v. Mayagüez Resort & Casino*, 176 DPR 848, 855 (2009).
[32] *Bco. Santander v. Correa García*, 196 DPR 452, 470 (2016). *Maldonado v. Junta Planificación*, 171 DPR 46, 55 (2007).
[33] *Montañez v. Policía de Puerto Rico*, 150 DPR 917, 921-922 (2000).
[34] R. Elfrén Bernier y J.A. Cuevas Segarra, Aprobación e interpretación de las leyes en Puerto Rico, 2da ed., San Juan, Ed. Pubs. JTS, 1987, pág. 147.
[35] *Moreno Orama v. UPR*, 178 DPR 969, 973 (2010).

partes pretenden obtener una opinión consultiva y cuando se pretende promover un pleito que no está maduro.[36]

Entre las referidas doctrinas, se encuentra la doctrina de madurez.[37] De acuerdo con esta doctrina, los tribunales debemos examinar si la controversia sustantiva planteada en el recurso ante nuestra consideración está definida concretamente, de manera que nos permita evaluarla en sus méritos, y si el daño aducido es suficiente para requerir adjudicación.[38] En nuestra función revisora, un recurso judicial es prematuro cuando el asunto del cual se trata no está listo para adjudicación; esto es, cuando la controversia no está debidamente delineada, definida y concreta.[39] Como ha pronunciado reiteradamente el Tribunal Supremo de Puerto Rico, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[40] Como tal, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[41]

III

Este tribunal intermedio tiene ante su consideración un recurso de *Certiorari*. Precisa destacar que, en el presente caso, contra la parte recurrida se emitió una *Sentencia en Rebeldía*, la cual, luego de ser notificada a las partes, advino final y firme. De ahí y luego de varios incidentes procesales, tras confirmarse la venta judicial de la propiedad objeto del presente litigio, la parte peticionaria compareció ante el foro primario para solicitar el retiro de una suma específica de dinero, producto de la venta judicial. El foro primario emitió una *Orden* para que se expidiera un cheque por

---

[36] *Crespo v. Cintrón*, 159 DPR 290, 298 (2003).
[37] J.J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 89.
[38] *Com. de la Mujer v. Srio de Justicia*, 109 DPR 715, 722 (1980).
[39] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008). *Juliá et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366-367 (2001).
[40] *Juliá et al. v. Epifanio Vidal, S.E.*, *Id.*, en la pág. 365.
[41] *Id.*, en la pág. 366.

una suma menor a la solicitada por la parte peticionaria. Fue ahí que tuvo su génesis la inconformidad de la parte peticionaria, que provocó la presentación del recurso ante nos. Ahora bien, es menester destacar que, de un estudio del expediente ante nuestra consideración, incluyendo el expediente judicial ante el TPI en el Sistema Unificado de Manejo y Administración de Casos (SUMAC) revela que, **debido a la falta de notificación adecuada a las partes**, carecemos de autoridad para intervenir en el presente caso puesto a que el recurso de *Certiorari* fue presentado de forma prematura. Nos explicamos.

En el presente caso, los escritos relacionados a la controversia de autos no fueron notificados a la parte recurrida. Es de ver, que el caso ante nuestra consideración fue presentado ante el TPI mediante el SUMAC y que la parte recurrida no cuenta con representación legal. Por tanto, la radicación de escritos a través del SUMAC no le confiere una notificación simultánea a partes por derecho propio a través de dicho sistema, y tampoco consta en los escritos en cuestión, que la parte peticionaria haya certificado el envío a dicha parte. Empero, más importante aún, el foro primario comenzó a preterir del volante de notificación de sus determinaciones desde la *Orden* notificada a la Entrada Núm. 21 en el SUMAC, que constituye la última notificación al señor López Budet en dicho expediente judicial. Esta notificación de *Orden* es, inclusive, previa a la controversia de autos. Veamos.

En lo pertinente, y según hemos detallado en la relación de hechos, la primera instancia judicial emitió una *Orden* allá para el 18 de mayo de 2023, con fecha de notificación del 22 de mayo de 2023.[42] Dicha *Orden* no fue notificada a la parte recurrida. Luego, el TPI emitió una *Orden* el 17 de julio de 2023, con fecha de

---

[42] *Véase,* además, Entrada Núm. 29 del SUMAC.

notificación del 18 de julio de 2023.[43] Esta *Orden* tampoco fue notificada a la parte recurrida. Por último, y en atención a la solicitud de reconsideración presentada por la parte peticionaria, el tribunal *a quo* emitió una *Orden* (en reconsideración) el 6 de septiembre de 2023, con fecha de notificación del 12 de septiembre de 2023.[44] Siguiendo el mismo curso de acción, el Tribunal de Primera Instancia tampoco notificó la *Orden* a la parte recurrida.

En esencia, y como cuestión de umbral, los tribunales venimos llamados a auscultar nuestra propia jurisdicción. Es norma reiterada en nuestro ordenamiento, que: "los tribunales deben ser celosos guardianes de su jurisdicción y que no tienen discreción para asumir jurisdicción allí donde no la tienen".[45] Es norma reconocida que las cuestiones relativas a la jurisdicción de los tribunales para atender los recursos ante su consideración constituyen materia privilegiada.[46]

Según hemos expuesto, en nuestra función revisora, un recurso judicial es prematuro cuando el asunto del cual se trata no está listo para adjudicación; esto es, cuando la controversia no está debidamente delineada, definida y concreta.[47] Como ha pronunciado reiteradamente el Tribunal Supremo de Puerto Rico, un recurso prematuro adolece del insubsanable defecto de privar de jurisdicción al tribunal al cual se recurre.[48] Como tal, su presentación carece de eficacia y no produce ningún efecto jurídico, pues no hay autoridad judicial para acogerlo.[49] En el recurso ante nuestra consideración, la falta de notificación adecuada a todas las partes acarrea que el asunto ante nuestra consideración sea uno

---

[43] *Véase,* además, Entradas Núm. 36 y 37 del SUMAC.

[44] *Véase,* además, Entrada Núm. 40 del SUMAC.

[45] *Torres Alvarado v Madera Atiles, supra,* 500. *Peerless Oil v. Hnos. Torres Pérez,* supra. *S.L.G. Szendrey-Ramos v. F. Castillo,* supra. *Ríos Martínez, Com. Alt. PNP v. CLE, supra.*

[46] *AAA v. Unión Abo. AAA, supra.*

[47] *Torres Martínez v. Torres Ghigliotty,* 175 DPR 83, 98 (2008). *Juliá et al. v. Epifanio Vidal, S.E.,* 153 DPR 357, 366-367 (2001).

[48] *Juliá et al. v. Epifanio Vidal, S.E., Id.,* en la pág. 365.

[49] *Id.,* en la pág. 366.

prematuro, por lo que razonamos que no contamos con autoridad para entender en el mismo. Lo anterior no impide que una vez el foro primario subsane las deficiencias aquí señaladas, y se produzca una notificación adecuada a las partes, cualquiera de estas pueda presentar un recurso apelativo, de entenderlo necesario.

## IV

Por los fundamentos que anteceden, se *desestima* el recurso presentado por falta de jurisdicción, por haberse presentado de forma prematura.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones